# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **OLIN WOOTEN,** | ) | |
| Plaintiff | ) | Civil Action No. 1:07cv00052 |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **ROBERT C. LIGHTBURN,** | ) | |
| Defendant | ) | By: Pamela Meade Sargent |
| | ) | United States Magistrate Judge |

This case is currently before the court on the defendant's Motion for Summary Judgment, (Docket Item No. 19), and the defendant's Motion for Judgment on the Pleadings for Failure to State a Claim, (Docket Item No. 20), which were both filed on October 11, 2007.[1] Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1332. These motions are before the undersigned magistrate judge by referral, pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommendation.

## I. Facts

The facts presented in the record of this case will be viewed in the light most

---

[1] On January 23, 2008, the undersigned entered an order granting Plaintiff's Second Motion To Amend Complaint, (Docket Item No. 39), and instructing the Clerk to file the Second Amended Complaint. The January 23, 2008, order, (Docket Item No. 46), further stated that the court would treat the defendant's pending dispositive motions as being directed at Count I of the Second Amended Complaint, which appears virtually identical to the Amended Complaint, (Docket Item No. 16), in response to which the motions were filed. *See* n. 3, infra.

-1-

favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On July 24, 2006, the plaintiff, Olin Wooten, a Texas resident, entered into a contract with the defendant, Robert C. Lightburn, a Virginia resident, to purchase approximately 1,977.13 acres of unimproved land in Washington County, Virginia. (Docket Item No. 47, Exhibit A), ("Contract"). According to the Contract, the purchase price was $4,250,000.00. (Contract at 1.) The Contract provided:

> This price shall be adjusted to an exact Purchase price of $2,150.00 Dollars per (acre). The exact area to be determined by a survey, to be made by a registered surveyor and paid for by the "Purchaser." At his option, Purchaser may waive said survey. The Purchaser shall pay to "Seller" at settlement the Purchase Price in cash or by cashier's or certified check.

(Contract at 1.) In addition, the Contract contained a study period provision which stated:

> Purchaser and his agents shall have 30 days from the date of execution of this Contract by both Purchaser and Seller to allow the Purchaser, at its expense and liability, to enter upon the property to determine, through engineering and feasibility studies, whether Purchaser's plan of development of the Property is practical and to give the Purchaser time to look over the property, have title examined, and the deeds reviewed by a registered surveyor to decide if a survey is necessary. Purchaser shall contract for such studies within 5 days from the date of execution, and deliver to Seller and Seller's agent copies of the letter(s) ordering the studies. If within said 30 days, Purchaser notifies both Seller or an agent of Sell, in writing via Certified Mail, that his plan, in his sole judgment, is not practical or there is a problem with the deed, title or survey, Purchaser may declare this Contract null and void. In this event, Purchaser shall receive a full refund of his $50,000.00 U.S. Dollar Deposit and all parties shall be relieved of further liability hereunder. In the absence of such timely notice (time shall be of the essence) from the

-2-

> Purchaser that he elects to declare this Contract null and void, this Contract shall be in full force and effect. Purchaser agrees not to make changes in the character or topography of the Property during the course of the studies.

(Contract at 1.) Furthermore, the Contract indicated that the settlement date was originally scheduled for September 25, 2006, in Abingdon, Virginia. (Contract at 2.) However, pursuant to the Contract, the purchaser was permitted to extend the settlement from September 25, 2006, to October 24, 2006, if the purchaser paid $100,000.00 to the seller by September 20, 2006. (Contract at 2.) If the purchaser elected to extend the settlement date to October 24, 2006, he reserved the right to extend the settlement date one final time to November 20, 2006. (Contract at 2.) If the purchaser opted for the second extension, he must pay an additional $100,000.00 by October 18, 2006. (Contract at 2.)

On September 19, 2006, an amendment to the Contract was made when Wooten elected to extend the settlement date from September 25, 2006, to October 24, 2006, and paid the required $100,000.00. (Docket Item No. 24), (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment and Motion for Judgment on the Pleadings, ("Plaintiff's Brief"), Exhibit 5 at 36). Another amendment to the Contract was made as of October 16, 2006, in which Wooten extended the settlement date from October 24, 2006, to November 20, 2006. (Plaintiff's Brief, Exhibit 5 at 37.) The amendment specifically stated that "TIME IS OF THE ESSENCE with respect to the final November 20, 2006[,] settlement date and may not be extended without prior written agreement between both the Purchaser and the Seller." (Plaintiff's Brief, Exhibit 5 at 37.) Wooten paid the required $100,000.00 non-refundable deposit. (Plaintiff's Brief, Exhibit 5 at 37.) A final amendment was made on November 16,

2006, and the settlement date was extended from November 20, 2006, to November 30, 2006. (Plaintiff's Brief, Exhibit 5 at 38.) In relevant part, the amendment read "TIME IS OF THE ESSENCE with respect to the final November 30, 2006[,] Settlement Date. No further settlement date extensions are permitted, this transaction must settle on or before November 30, 2006[,] otherwise Purchaser will be in Default." (Plaintiff's Brief, Exhibit 5 at 38.) In exchange for the extension, Wooten agreed to pay $50,000.00, which would go toward the purchase price, if the transaction reached settlement. (Plaintiff's Brief, Exhibit 5 at 38.) In addition, Wooten agreed to pay $1,100.00 per day from November 21, 2006, until the settlement date. (Plaintiff's Brief, Exhibit 5 at 38.)

In addition to the settlement extension option, the Contract allowed for an extension of the previously discussed study period. (Contract at 4-5.) The Contract stated, "[i]f the Purchaser does not withdraw from the Contract within the first 30 days and the $50,000.00 Deposit becomes non-refundable and is subsequently delivered to the Seller, then the Purchaser may continue to study the property for an additional 2 weeks, ending on September 7, 2006[,] at 5:00 PM EST." (Contract at 4.) However, if during the additional two weeks the property is found to be objectionable, the purchaser "may declare this Contract null and void by delivering written notice, via Certified Mail to the Seller or the Seller's agent on or before [September] 7, 2006." (Contract at 4.) If the Contract is declared null and void, "all parties shall be relieved of further liability hereunder." (Contract at 5.) Moreover, "[i]n the absence of such timely notice (time shall be of the essence) from the Purchaser that he elects to declare this Contract null and void, this Contract shall be in full force and effect." (Contract at 5.) There is nothing within the record to show that Wooten declared the Contract

null and void by September 7, 2006.

After entering into the Contract, but before closing, Wooten alleges that he attempted to hire Gale Maiden, a surveyor, to determine the actual acreage being conveyed. (Plaintiff's Brief, Exhibit 3.) However, according to Wooten, Lightburn would not accept a survey conducted by Maiden because Maiden had apparently lost his surveying license. (Plaintiff's Brief, Exhibit 3.) Wooten alleged that, in approximately late September or early October 2006, Lightburn recommended that Wooten hire Holbrook Surveyors to conduct a survey of the property. (Plaintiff's Brief, Exhibit 3.) Upon this recommendation, Wooten employed Holbrook Surveyors who, in turn, determined the property boundaries, but was unable to perform work in the field due to time constraints. (Plaintiff's Brief, Exhibit 3.) Wooten contends that Lightburn was aware that Holbrook Surveyors would be unable to perform the work in the field. (Plaintiff's Brief, Exhibit 3.)

Based upon the evidence before the court, prior to closing, a dispute arose regarding the actual acreage being conveyed. (Plaintiff's Brief, Exhibit 5 at 39-55.) On November 28, 2006, Phillip Hearl, counsel for Wooten, contacted Timothy Kelsey, counsel for Lightburn, and wrote, "[t]he only other issue that has arisen is a provision in the Contract that allows for an adjustment in the purchase price if the acreage is not 1,977."[2] (Plaintiff's Brief, Exhibit 5 at 45.) Hearl informed Kelsey that the final

---

[2]At the time of contracting and during the relevant discussions mentioned in the summary of facts, Wooten was represented by Phillip Hearl of Bolling, Hearl & Russell of Abingdon, Virginia, and Lightburn was represented by Timothy Kelsey of Boyle, Bain, Reback & Slayton of Charlottesville, Virginia. Currently, Wooten is represented by Daniel R. Bieger of Copeland & Bieger, P.C., of Abingdon, Virginia. Lightburn is still represented by the firm of Boyle, Bain, Reback & Slayton; however, Charles C. Crook, III, and Marshall M. Slayton are now

-5-

survey would not be complete for "another week or so" and asked Kelsey to discuss the idea of allowing Paragraph 2 of the Contract to survive closing "so that [the parties could] make any necessary adjustments post-closing[.]" (Plaintiff's Brief, Exhibit 5 at 45.) Later that same day, Hearl wrote, "I now understand that I will have the acreage figure tomorrow from the surveyor so we ought to be able to wipe that out." (Plaintiff's Brief, Exhibit 5 at 44.) At this point in the discussions, it appears that Wooten's counsel thought the survey would reveal the correct amount of acreage and that there may be no need to have Paragraph 2 of the Contract survive the closing.

Kelsey responded on November 29, 2006, and indicated that he had "to review the language about the acreage adjustment." (Plaintiff's Brief, Exhibit 5 at 44.) Kelsey further explained, "[m]y client wants to take the position that the time has passed for such an adjustment and I'm just reviewing the contract and addenda to see if his argument will fly." (Plaintiff's Brief, Exhibit 5 at 44.) Kelsey stated that he thought the language in Paragraph 2 of the Contract was "pretty conclusive" but he wanted to take a closer look at it. (Plaintiff's Brief, Exhibit 5 at 44.) He informed Hearl that he would contact him later in day and asked that Hearl not record the deed "until [the parties had] something nailed down." (Plaintiff's Brief, Exhibit 5 at 44.) In response, Hearl clarified that "[i]t certainly is our position that the survey adjustment remains applicable." (Plaintiff's Brief, Exhibit 5 at 43.)

Shortly thereafter, Kelsey requested that Hearl forward the property survey signed by a registered surveyor. (Plaintiff's Brief, Exhibit 5 at 43.) Kelsey pointed out that Paragraph 2 required that the survey be conducted by a registered surveyor in

---

representing the firm.

order to determine the exact acreage. (Plaintiff's Brief, Exhibit 5 at 43.) He also referenced the November 16, 2006, amendment to the Contract which stated that time was of the essence and further noted that Paragraph 3 of the Contract provided an ample study period. (Plaintiff's Brief, Exhibit 5 at 43.) Based upon this information, Kelsey explained, "I do not think we would accept a survey to adjust the price after November 30, 2006." (Plaintiff's Brief, Exhibit 5 at 43.) After receiving this message, Hearl informed Kelsey that he was awaiting a letter from the surveyor which measured the acreage amount at 1,770.29 acres. (Plaintiff's Brief, Exhibit 5 at 43.) Due to this measurement, Hearl stated that the purchase price should be adjusted to $3,806,123.50. (Plaintiff's Brief, Exhibit 5 at 43.)

Hearl sent an e-mail to Kelsey at 11:33 p.m. on November 29, 2006, and attached a copy of a survey plat that had been completed by Holbrook Surveyors. (Plaintiff's Brief, Exhibit 5 at 53.) Contrary to his previous e-mail, Hearl indicated that the survey reflected a total acreage of 1,896.77, which he said equated to a sales price of $4,078,055.50. (Plaintiff's Brief, Exhibit 5 at 53.) Hearl referenced concerns that had been expressed by Lightburn's counsel regarding the use of a deed compilation as opposed to a field survey in arriving at the actual acreage amount. (Plaintiff's Brief, Exhibit 5 at 53.) However, Hearl noted that the Contract did not specifically require a field survey and that the actual boundaries of the property in question did not total 1,977 acres as originally represented by Lightburn. (Plaintiff's Brief, Exhibit 5 at 53.) He further explained that Wooten was "not adverse to leaving the issue open for confirmation by a field survey." (Plaintiff's Brief, Exhibit 5 at 53.) He stated that the surveyor had informed him that it would be approximately six to eight weeks before a complete field survey could be conducted due to the large size of the property.

(Plaintiff's Brief, Exhibit 5 at 53.) Hearl commented that if Lightburn would agree to keep the issue open, Wooten would pay him the additional $2,150.00 per acre plus interest "that the field survey may eventually indicate is over the currently stated 1,896.77 acres." (Plaintiff's Brief, Exhibit 5 at 53.) Hearl requested three months to complete the field survey and offered to pay the acreage credit due to Wooten, with interest, if the field survey was not completed during that time period. (Plaintiff's Brief, Exhibit 5 at 53.) Wooten alleges that Lightburn rejected the survey plat completed by Holbrook Surveyors because it was not a field survey. (Plaintiff's Brief, Exhibit 3 at 8.)

On November 30, 2006, Kelsey e-mailed the following message to Hearl:

> As discussed, you are authorized to record the deed according to my instruction letter dated November 28, 2006, using the figures as stated in the Closing Statement included therewith. We are hereby tendering performance on behalf of Robert C. Lightburn and on his behalf demand payment according to the terms of the Closing Statement.

(Plaintiff's Brief, Exhibit 5 at 41.) In response, Hearl wrote:

> [O]ur interpretations of the Purchase Contract are clearly at odds. We believe that the Contract provides for a reduction in the purchase price to $2,150.00 per acre multiplied by 1,896.77 acres shown on the survey provided to you by email this morning. Based on this, Mr. Wooten is ready, willing and able to close immediately based on available funds in my Trust Account at $4,078,055.50.

(Plaintiff's Brief, Exhibit 5 at 41.) Hearl further explained that he felt compelled to set forth this issue in order to protect Wooten's rights. (Plaintiff's Brief, Exhibit 5 at 41.) However, he noted that Wooten agreed to pay the original purchase price "under

-8-

protest." (Plaintiff's Brief, Exhibit 5 at 41.) He reiterated:

> Again, this agreement to close based on the $4,250,000.00 purchase price is done under protest, and Mr. Wooten reserves all rights to pursue any and all claims available to him as a result of the acreage not being the represented 1,977. In this regard, Mr. Wooten objects to the provision in paragraph 2 of the Contract being merged into the Deed at closing.

(Plaintiff's Brief, Exhibit 5 at 41.) Kelsey promptly responded and set forth the procedure with which Lightburn had agreed to proceed. (Plaintiff's Brief, Exhibit 4.) In addition to instructions regarding payment of the purchase price and recording of the deed, Kelsey noted that Wooten "claims reservation of rights to paragraph 2 of the contract." (Plaintiff's Brief, Exhibit 4.) In closing, Kelsey wrote "I confirmed with my client that we can proceed according to the above." (Plaintiff's Brief, Exhibit 4.)

Wooten alleges that he and Lightburn also spoke several times about extending the closing date and that Lightburn agreed to honor "the up and down nature of paragraph 2" of the Contract that made the purchase price totally dependent upon the actual acreage conveyed. (Plaintiff's Brief, Exhibit 3.) Specifically, Wooten asserts that the parties agreed to keep the language of Paragraph 2 open for a field survey, even if the potential survey would not be completed for several months. (Plaintiff's Brief, Exhibit 3.) Based upon this alleged agreement, Wooten agreed to proceed with closing, which occurred on November 30, 2006. (Plaintiff's Brief, Exhibit 3.)

Wooten also alleges that Lightburn recommended that he employ Addison Surveyors to conduct the field survey. (Plaintiff's Brief, Exhibit 3.) Morever, Wooten claims that he and Lightburn agreed that the purchase price would be kept in escrow

-9-

pending the completion of the field survey. (Plaintiff's Brief, Exhibit 3.) Wooten paid a portion of the purchase price by personal check to Lightburn on December 1, 2006, with a notation on the check that read "for 1900+- escrow pending on field survey." (Plaintiff's Brief, Exhibit 3), (Plaintiff's Brief, Exhibit 6.) The check was later cashed by Lightburn with no objection to the notation. (Plaintiff's Brief, Exhibit 3.) Following closing, Wooten hired Addison Surveyors, as recommended by Lightburn, and paid $30,000.00 for the field survey. (Plaintiff's Brief, Exhibit 3.) The findings of this survey were presented to Lightburn by letter dated May 16, 2007, where Hearl noted that Wooten agreed to proceed with the closing under protest and that he reserved the right to revisit the acreage issue pending a field survey. (Docket Item No. 47, Exhibit C.) The field survey and plat indicated that the property in question contains 1,879.273 acres, which would result in a purchase price reduction of $210,113.05.[3] (Docket Item No. 47, Exhibit C.) Despite this information, Lightburn refused to adjust the purchase price.

---

[3]Although Wooten identified the actual acreage conveyed as 1,879.273 acres in his letter to Lightburn, (Docket Item No. 16, Exhibit C), and his original Complaint with this court, (Docket Item No. 1), in his Motion to Amend Complaint and his Amended Complaint, (Docket Item No. 10), dated September 17, 2007, he reported that the acreage figure, as originally reported, was wrong. Wooten explained that a misreading of the survey prepared by Addison Surveyors included an 84.038 acre tract that was not purchased from Lightburn. (Docket Item No. 10.) By Order dated October 3, 2007, the court granted Wooten's Motion to Amend. (Docket Item No. 15.) Wooten's Amended Complaint alleged that the actual acreage purchased totaled 1,795.235 acres, resulting in a required reduction in the purchase price of $390,244.75. (Docket Item No. 16.) In his Second Amended Complaint, Wooten again alleges that the actual acreage purchased totaled 1,795.235 acres, but he now asserts that the resulting reduction in the purchase price would be $391,074.25. (Docket Item No. 47.) This figure appears to be the only difference between the claim contained in the Amended Complaint and Count I of the Second Amended Complaint.

*II. Analysis*

The court has before it both a Motion for Summary Judgment and a Motion for Judgment on the Pleadings for Failure to State a Claim, wherein Lightburn relies upon relatively the same information. Lightburn's Motion for Judgment on the Pleadings is brought pursuant to Federal Rule of Civil Procedure 12(.), Rule 12(d) provides that "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). Because matters outside the pleadings have been presented to and considered by the court, the court must treat Lightburn's Motion for Judgment on the Pleadings as a motion for summary judgment. Thus, both motions shall be treated as motions for summary judgment.

The standard of review for a motion for summary judgment is well-settled. A moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts, and the reasonable inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Nguyen v. CNA Corp.*, 44 F.3d

-11-

234, 237 (4th Cir. 1995). The nonmoving party is entitled to have the credibility of all its evidence presumed. *See Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *See Anderson*, 477 U.S. at 248.

When this court's jurisdiction is based upon diversity, as it is in this case, the court must apply the substantive law of the forum state, including the forum state's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Ferens v. John Deere Co.*, 494 U.S. 516, 519, 531 (1990); *Nguyen*, 44 F.3d at 237; *Merlo v. United Way of Am.*, 43 F.3d 96, 102 (4th Cir. 1994). This court sits in Virginia. In Virginia, the making of a contract is governed by the place where the contract is made. *See Occidental Fire & Cas. Co. Of N.C. v. Bankers & Shippers Ins. Co. Of N.Y.*, 564 F. Supp. 1501, 1503 (W.D. Va. 1983) (citing *Woodson v. Celina Mutual Ins. Co.*, 177 S.E.2d 610, 613 (Va. 1970)). Because Wooten is alleging that Lightburn failed to honor a modification of the Contract, the nature, validity and interpretation of the Contract are at issue. While the facts before the court are not clear as to the location of the parties when the modification was allegedly agreed upon, the parties assert that Virginia law is controlling and the court has no evidence before it to suggest to the contrary.

In the case at hand, Wooten bases his claim on the assertion that Lightburn failed to honor a modification of the parties' original Contract for the purchase of land. Lightburn now seeks summary judgment on the issue. Pursuant to Virginia's statute of

-12-

frauds, "[u]nless a promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought . . . [u]pon any contract for the sale of real estate[.]" VA. CODE ANN. § 11-2(6) (2006 Repl. Vol.). Thus, Virginia law requires that any contract for the sale of land be in writing. In general, a written contract may be modified or changed by a later oral or written agreement. *Zurich General Accident & Liab. Ins. Co, Ltd. v. Baum*, 165 S.E. 518, 519 (Va. 1932). However, the Supreme Court of Virginia has stated that "the parol modification of an agreement required to be in writing by the statute of frauds would permit 'the very mischiefs which the statute meant to prevent.'" *See Lindsay v. McEnearney Assocs., Inc.*, 531 S.E.2d 573, 575 (Va. 2000) (quoting *Heth's v. Woolridge's*, 27 Va. (6 Rand.) 605, 609-11 (1828)). Furthermore, the court has held when "a contract is required to be in writing pursuant to Code § 11-2, any modification to that contract must also be in writing and signed by the party to be charged or his agent." *See Lindsay*, 531 S.E.2d at 575-76. In *Lindsay*, the Supreme Court of Virginia recognized that, in certain circumstances, written contracts may be modified by parol agreement. 531 S.E.2d at 576 (citing *Reid v. Boyle*, 527 S.E.2d 137, 145 (Va. 2000)). Nonetheless, the court clearly explained that this general principle does not apply to an agreement which is required to be in writing under Virginia Code § 11-2. *See Lindsay*, 531 S.E.2d at 576.

After reviewing the arguments asserted by Lightburn, as well as all other evidence that has been presented, the undersigned is of the opinion that the critical inquiry is to determine whether the alleged modification was an oral modification, or whether the modification was reduced to writing. Upon a thorough review of the evidence, the court is unable to identify a written agreement wherein Lightburn granted Wooten the right

-13-

to pursue the acreage issue post-closing. Although there is ample evidence related to the discussions that took place between the parties and between the parties' counsel as to the issue of acreage, no written modification has been shown. The e-mail communications do reveal that a modification was discussed; however, no evidence has been presented to show that the modification was ever reduced to writing. In addition, on brief, Wooten concedes that the modification was indeed an oral modification. (Docket Item No. 29), (Plaintiff's Response to Defendant's Reply Brief, ("Plaintiff's Response"), at 3.) Furthermore, Wooten has produced no writing signed by Lightburn or his counsel recognizing that Lightburn had agreed to the requested modification. At most, Wooten has presented evidence of writings from Lightburn's counsel which acknowledge that Lightburn recognized that Wooten was proceeding under a reservation of his right to assert a future claim.

While there is a dispute in fact as to whether an oral agreement to modify the Contract was ever entered into by the parties, the court must focus upon whether this dispute presents a genuine issue as to a material fact preventing the entry of summary judgment in the defendant's favor. *See Charbonnages de France*, 597 F.2d at 414. Wooten's breach of contract claim contained in Count I of the Second Amended Complaint is based upon the assertion that a modification was entered into between the parties; a modification that he concedes was an oral modification. Thus, although the facts must be viewed in a light most favorable to Wooten, the nonmoving party, the facts show that the alleged modification was not in writing, signed by the party to be charged or his agent. Nor has Wooten produced any writing signed by Lightburn or his counsel which evidences that Lightburn had agreed to the modification. That being the case, the undersigned finds that no genuine issue as to any material fact exists as to Wooten's

-14-

breach of contract claim. Therefore, the undersigned recommends that the court grant Lightburn's Motion and enter summary judgment in Lightburn's favor as to Count I of the Second Amended Complaint.[4]

Wooten also argues that the alleged oral modification at issue is enforceable, despite the requirements of the statute of frauds, because both parties have partially performed the terms of the modified contract. (Plaintiff's Response To Reply Brief of Defendant, ("Plaintiff's Response"), (Docket Item No. 29), at 1-3.) Virginia law does allow a court of equity to avoid the statute of frauds and enforce a parol agreement for the sale of land under certain circumstances. *See Pair v. Rook*, 77 S.E.2d 395, 400 (1953) (citing *Plunkett v. Bryant*, 45 S.E. 742, 744 (1903)). Such should be done, however, only if the partial performance relied upon is:

> of such an unequivocal nature ... to be evidence of the execution (existence) of an agreement. They must be such as could be done with no other view or design than to perform the agreement. They must unequivocally refer to and result from an agreement, and be such as the party would not have done unless on account of that very agreement, and with a direct view to its performance. The act must be sufficient of itself, without any other information or evidence, to satisfy the court from the circumstances it has created and the relations it has formed that they are only consistent with the assumption of the existence of a contract the terms of which equity will enforce. Until acts are alleged which of themselves imply the existence of such a contract, parol evidence to show its terms is inadmissible.

*Pair*, 77 S.E.2d at 400 (quoting *Plunkett*, 45 S.E. at 744).

---

[4]Because the court finds that the statute of frauds prohibits enforcement of the alleged oral contract which serves as the basis for Wooten's breach of contract claim, the undersigned sees no reason to address Lightburn's remaining arguments as to why judgment should be entered in his favor on this claim on this claim..

-15-

The partial performance on which Wooten relies is that the parties proceeded to the November 30, 2006, closing, at which Wooten paid valuable consideration for the property at issue and that, in exchange for this payment, Lightburn transferred the title to the property to Wooten. (Plaintiff's Response at 2.) While this performance of the parties is no doubt "of such an unequivocal nature ... to be evidence" of the existence of an agreement to sale the property, the existence of such an agreement is not in dispute. The Contract is before the court. These actions do not, however, provide unequivocal evidence that the parties modified the Contract to allow for a post-closing adjustment in the purchase price based on a yet-to-be-obtained survey. That being the case, I find that the evidence in this case, as a matter of law, does not defeat the application of the statute of frauds based on the parties' partial performance.

*III. Findings of Fact and Conclusions of Law*

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Virginia law controls the claim at issue in this case;

2. Under the Virginia statute of frauds, any contract for the sale of real estate must be in writing to be enforced;

3. The evidence presented shows that the parties entered into a written contract for the sale of land in Washington County, Virginia, on July 24, 2006. According to Wooten, the parties agreed to a modification of the original contract, allowing Wooten to reserve the right to revisit the issue of how many acres had actually been conveyed because an apparent dispute had arisen regarding the amount of acreage;

4. Under Virginia law, when a contract is required to be in writing to be enforced pursuant to the statute of frauds, any modification to that contract also must be in writing and signed by the party to be charged or his agent to be enforced;

5. Wooten concedes that the alleged modification at issue in his breach of contract claim was an oral modification;

6. Wooten has produced no writing signed by Lightburn which evidences that Lightburn had agreed to the oral modification; and

7. Therefore, the Virginia statute of fraud bars enforcement of the alleged oral modification to the Contract.

## *IV. Recommended Disposition*

Based upon the above-stated reasons, I recommend that the court grant the defendant's Motion for Summary Judgment as to the plaintiff's claim that the defendant failed to honor an alleged modification to the original contract.

## *V. Notice To Parties*

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636 (b)(1)(C):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which

objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in the matter to the Honorable Glen M. Williams, Senior United States District Judge.

The clerk is directed to send copies of this Report and Recommendation to all counsel of record.

**DATED:** This 25th day of January 2008.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE